UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Wendy Sturm-Sandstrom,

    Plaintiff,

v.                                     MEMORANDUM OPINION
                                          AND ORDER
                                          Civil No. 06-3768

The County of Cook,

    Defendant.

_____

    Tammy P. Friederichs and Stephen M. Thompson, Friederichs & Thompson, P.A. for and on behalf of Plaintiff.

    Dyan J. Ebert and Melinda M. Sanders, Quinlivan & Hughes, P.A. for and on behalf of Defendant.

_____

    This matter is before the Court on Defendant's motion for summary judgment.

    I.    <u>Background</u>

    Plaintiff Wendy Sturm-Sandstrom was initially hired by Defendant Cook County (hereinafter "the County") in 2001 to fill a temporary clerical worker position in the Planning and Zoning Office. In December 2001, Plaintiff was

hired as the County's Jail Administrator/Dispatch Supervisor. A requirement of this position was to have a Peace Officers Standards and Training ("POST") license and to carry a firearm, as the duties of this position required that she have contact with, and transport, prisoners. In December 2003, Plaintiff was assigned to an Out of Class/Temporary Assignment Deputy position, and she was hired as a full time Deputy in May 2004. She resigned this position in November 2004.

On or about August 4, 2005, Plaintiff filed a charge of sex discrimination with the EEO. In this charge, Plaintiff alleged that she was constructively discharged, that she filed a harassment complaint in June 2004 after she was reprimanded for unprofessional conduct and disruption to the workplace, and after filing the harassment complaint, Plaintiff was questioned about her involvement in an investigation involving the Border Patrol. Plaintiff also included in her charge an allegation that she was not paid at the same rate as a similarly situated male deputies for work as a temporary deputy. Sanders Aff., Ex. 30.

A Right to Sue letter was issued to Plaintiff in June 2006, and this action was then filed in September 2006. In her Complaint, Plaintiff alleges she was the victim of sex discrimination in violation of Title VII and the Minnesota Human

Rights Act ("MHRA"). Plaintiff alleges that during her employment at the County, she was subjected to gender discrimination and harassment. She alleges that she was the only female deputy and that she was treated differently than male deputies and was not paid the same as her male counterparts. Complaint, ¶ 13. She further alleges that she complained of discrimination and harassment, and was further discriminated against and harassed in response. Id. ¶ 14. She also alleges that she was constructively discharged in November 2004, and that she was replaced by a male. Id. ¶¶ 17-18.

The County has moved for summary judgment, asserting that Plaintiff cannot establish a claim of disparate treatment, hostile work environment or that she was constructively discharged.

II. Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' -

that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

   III.   Analysis

   A.   Timeliness

Under Title VII, a plaintiff must file a charge with the EEO within 300 days of an unlawful practice. With respect to her MHRA claim, the time period is one year. Thus, Plaintiff is time-barred from asserting any claim based on a discrete act that occurred prior to August 4, 2004. Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. ___, 127 S.Ct. 2162 (2007). In opposition to the County's motion for summary judgment, Plaintiff argues only that her claims of constructive discharge and hostile work environment should be allowed to proceed to trial. There is no dispute that Plaintiff's claim of constructive discharge is timely. Furthermore, the Court will consider evidence concerning events that occurred prior to August 4, 2004, as such evidence is relevant to both the constructive discharge and hostile environment claims pursuant to the continuing violations

4

doctrine. See Mems v. City of St. Paul, Dept. of Fire and Safety Services, 327 F.3d 771, 785 (8th Cir. 2003).

    B.  Disparate Treatment/Constructive Discharge

The elements of a prima facie case of disparate treatment are that 1) plaintiff is a member of a protected class; 2) she was qualified for the job; and 3) she suffered an adverse employment action under circumstances giving rise to an inference of discrimination. Whitley v. Peer Review Systems, Inc., 221 F.3d 1053, 1055 (8th Cir. 2000).

The County asserts that it is entitled to summary judgment on this claim as Plaintiff has failed to show that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination based on gender. Plaintiff argues that summary judgment should be denied, as there are genuine issues of material fact as to whether she was constructively discharged.

To prove a claim of constructive discharge, Plaintiff must show that the County deliberately created intolerable working conditions with the intention of forcing her to quit her job. Johnson v. Bunny Bread, 646 F.2d 1250, 1256 (8th Cir. 1981). It is not enough to demonstrate that an employer made work conditions less enjoyable or more stressful. See eg., Hanenburg v. Principal Mut. Life Ins.

Co., 118 F.3d 570, 574-575 (8th Cir. 1997) (being held to high attendance standards and close scrutiny of work and phone use not enough to support a finding that supervisors' conduct created the compulsion to quit that is necessary for a constructive discharge."). Furthermore, Plaintiff can "satisfy the intent requirement with proof that her resignation was a reasonably foreseeable consequence of her employer's discriminatory actions." Id. at 575.

The County asserts there is no evidence that Sheriff Wirt or others in the Sheriff's department deliberately created intolerable working conditions with the intention that she quit her job. Plaintiff admitted that she began to look for new employment as early as August 2004 and continued working until November 26, 2004. Even after she found new employment, Plaintiff gave two weeks notice. Sanders Aff., Ex. 8. These facts establish that at most, Plaintiff's working conditions may have been unpleasant, but not intolerable.

The County further asserts that Plaintiff has not demonstrated that she was treated differently based on her gender. Instead, there is evidence to suggest that Plaintiff's personal issues are the likely reason she was treated as she was. For example, there were many ongoing issues concerning Plaintiff, her husband and another deputy, Pat Eliason. Allegations of improprieties circulated the

workplace concerning Eliason and Plaintiff. Plaintiff's Dep. at 35-36. In addition, Plaintiff's husband, who was also a deputy, began an affair, and circulated a letter to co-workers in July 2004, admitting to the affair and asking that Plaintiff not be blamed. Sanders Aff., Ex. 15. There is also evidence that Plaintiff did not get along with the female dispatchers. The fact that she did not get along with female co-workers, however, does not establish gender discrimination. Finally, the County asserts that Plaintiff was replaced by another woman, a fact that weighs against her claim of gender discrimination.

Plaintiff responds that summary judgment should be denied, as the record is replete with evidence that she was subjected to a sexist work culture, fostered by Sheriff Wirt, and that this sexist work culture created intolerable working conditions for her throughout the time she was a patrol deputy.

First, Plaintiff alleges that prior to her employment, Sheriff Wirt had demonstrated a discriminatory animus toward women. In support, Plaintiff has submitted the affidavit of Peg McMahon, who was the only female deputy with the County from 1994 to 2001. McMahon Aff., ¶ 2. McMahon states that during her employment, Sheriff Wirt made many derogatory comments to her, subjected her to differential treatment that was humiliating and degrading, and provided

male deputies training and opportunities that she was not provided. Id. ¶¶ 7-24. Plaintiff has also submitted an affidavit from John Lyght, Wirt's predecessor as Sheriff of Cook County. Lyght personally observed Wirt interact with Ms. McMahon, and noted that Wirt treated male deputies differently than he did Ms. MacMahon. Lyght Aff., ¶ 7. Lyght also stated that he was told by deputy Doug Rude that Wirt was "up to his old tricks" in that he was harassing Plaintiff. Id. ¶ 12. Lyght thereafter confronted Wirt, who told Lyght that "women don't belong in law enforcement." Id. ¶ 13.

In addition, Plaintiff alleges that she was not provided the same training opportunities as male deputies. For example, she complains that she was not provided training as to the operation of the intoxilizer equipment. Plaintiff Dep. at 150. As a result, if she stopped someone on suspicion of driving under the influence, she had to call a male deputy to administer a breath test. Id. at 194. Plaintiff further alleges that she was not given the same equipment as the male deputies, such as a camera or evidence locker, and that the male deputies were condescending to her, or would stop talking when she walked into a room. Id. at 151-152. In response, the County asserts that Plaintiff was provided as much training as other male deputies. See, Sanders Aff., Ex. 11 (demonstrating the

8

number of training hours provided, but not the type of training). It does not appear, however, that Plaintiff is complaining of the number of hours of training she received. Rather, she is challenging the type of training she was allowed to participate in, and intoxilizer training would be important training for a patrol deputy.

Plaintiff also alleges that during her employment as a deputy, she was excluded from many social activities that took place both during and after work. For example, she was excluded from Fantasy Football leagues and other social events, like campfires, and her co-workers would talk about these activities around her, even though she wasn't invited to participate. Plaintiff Dep. at 149-151. She also felt ostracized by the male deputies when they would either stop talking or leave the room when Plaintiff would enter. Id. at 151-152.

Plaintiff asserts that another example of sexist treatment occurred as a result of incidents that took place on the night of June 12, 2004. On that night, Plaintiff admittedly abandoned her shift for approximately 39 minutes, because she felt that the other deputy on duty, Joe Zallar, refused her assistance on a pursuit, apprehension and processing of a fleeing suspect because she was a woman. Plaintiff later received a written reprimand for abandoning her shift.

9

Sanders Aff., Ex. 16. On June 17, 2004, Plaintiff filed an official grievance in response to the written reprimand, asserting she was discriminated against on the basis of sex and asking that the reprimand be removed from her personnel file. Plaintiff Ex. V. She also filed a sexual discrimination complaint with personnel on that same date. Sanders Aff., Ex. 18.

Sheriff Wirt denied her grievance, explaining that she was reprimanded because her conduct on June 12 was disruptive to the workplace and was unprofessional. Sanders Aff., Ex. 17. Thereafter, Plaintiff filed a step two grievance, which was reviewed by the personnel director, Janet Simonen. Ms. Simonen informed Plaintiff that after reviewing Plaintiff's written statement, speaking with Sheriff Wirt as well as a number of Sheriff Department employees, she supported Sheriff Wirt's action to issue Plaintiff a written reprimand. Plaintiff's Ex. W.

Her sex discrimination complaint was also investigated by Ms. Simonen and the Cook County Attorney Bill Hennessy. See Id., Ex. 20. Their investigation included a review of Plaintiff's written summary dated June 18, 2004 and of a letter from Plaintiff to a Mr. Davy, as well as interviews with a number of individuals with knowledge concerning the incident in question, as well as the

10

radio log. Id., p. 1.  In a six page, single spaced report, the Plaintiff was informed of the results of this investigation, and the bases for the conclusion that the Plaintiff was not discriminated against on the basis of sex.  Id.  It is Plaintiff's position that this investigation was a sham, however, as she was never personally interviewed.

After her step two grievance was denied, Plaintiff proceeded to a step three grievance.  A hearing was thereafter held on September 14, 2004.[1]  At this hearing, Plaintiff was accompanied by union representative Sarah Lewerenz.  In a letter dated September 17, 2004, Ms. Lewerenz notified the Cook County Board of her concerns regarding comments Sheriff Wirt made to her and the Plaintiff at the end of the grievance hearing.  Plaintiff's Ex. X.  According to Ms. Lewerenz, as she was leaving the hearing room, Sheriff Wirt had indicated that he would be talking to Plaintiff about other matters.  Id.  Ms. Lewerenz responded that she would like to be present when he did so, and that this appeared to anger the Sheriff.  Id.  Ms. Lewerenz then indicated that the union would not tolerate Sheriff Wirt "again harassing a female deputy."  Id.

Plaintiff asserts that this exchange between Wirt, Plaintiff and Ms.

---

[1]This grievance was ultimately withdrawn, however.

11

Lewerenz at the September hearing marked the beginning of the end of her job. It is Plaintiff's position that shortly after the hearing, Sheriff Wirt increased the pressure on Plaintiff by imposing unwarranted criticism on her, responding to Plaintiff's concerns with condescending memoranda, questioning her involvement in an investigation with the Border Patrol, padding her personnel file and not treating her in a courteous manner.  Plaintiff Dep. 199-200; 215-216; Exs. AA, DD, EE, FF.

Although she did admit to looking for new work in August 2004, Plaintiff asserts that she did not quit her position with the County at that time because of financial reasons.  She was in the process of getting a divorce, and for her and her children's financial well being, she did not feel she could quit her job.  Plaintiff's Dep. at 234-235.

Finally, Plaintiff has alleged that she was not paid at the same rate as male deputies.  This assertion is based on the fact that an error with respect to Plaintiff's pay occurred for the period May 16-29, 2004, and that the County issued Plaintiff a check to cover the error.  It is Plaintiff's position although the County did issue her a check for the incorrect pay differential, the County only paid her after she brought an EEO claim.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has easily met her burden of demonstrating genuine issues of material fact as to whether she was subjected to intolerable working conditions under circumstances from which a jury could infer gender discrimination. The fact that Plaintiff was replaced by a woman may be relevant to her claims, but it is not dispose of such claims. See Walker v. St. Anthony's Med. Ctr., 881 F.2d 554, 558 (8th Cir. 1989) (finding it "entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender.") Given the evidence of gender animus put forward by Plaintiff, it is conceivable in this case that a jury could find that Plaintiff was intentionally discriminated against on the basis of her sex, and that such intentional discrimination created intolerable working conditions. Accordingly, as to Plaintiff's constructive discharge claim, summary judgment must be denied.

    2.  Hostile Environment

The elements of a sexual harassment claim are that: 1) plaintiff is a member of a protected group; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; and 4) such harassment affected a term,

13

condition or privilege of her employment.  Okruhlik v. University of Arkansas, 395 F.3d 872, 881 (8th Cir. 2005).  To be actionable, the harassment must be "sufficiently severe or pervasive to create an objectively hostile work environment."  Bunda v. Potter, 369 F.Supp.2d 1039, 1054 (N.D. Iowa 2005)(citing Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1047 (8th Cir. 2005)).  "[T]he environment must be more than merely offensive, immature or unprofessional; it must be extreme."  Id. (citing Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 980 (8th Cir. 2003)).  If the plaintiff "does not subjectively perceive the environment as abusive, then the conduct has not altered the conditions of employment."  Id.

In this case, the same evidence and factual disputes relevant to whether Plaintiff's working conditions were intolerable are relevant to whether Plaintiff was subjected to harassment that was sufficiently severe or pervasive to create an objectively hostile work environment.

The County argues it is nonetheless entitled to summary judgment on this claim as there is no dispute that it took timely and appropriate action following receipt of her claims.  Plaintiff does dispute this contention, asserting that despite undergoing investigations of her claims, Plaintiff was not questioned directly.

Sheriff Wirt did not speak with her personally before issuing the written reprimand, and Ms. Simonen did not speak with her personally before denying her step two grievance or her discrimination claim.  Plaintiff Dep. at 75, 183-184; Sanders Aff., Ex. 21.

The Court agrees that genuine issues of material fact preclude summary judgment as to Plaintiff's hostile work environment claim.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 20] is DENIED as to the claim of constructive discharge and hostile work environment.

Date: May 13, 2008

s / Michael J. Davis<br>
Michael J. Davis<br>
United States District Court